The next case, number 21-1932, United States v. Alex Manuel Lopez-Felicie. At this time, counsel for the appellant, please introduce yourself on the record to begin. Yes. Good morning, Your Honor. Robert Meehan on behalf of Alex Manuel Lopez-Felicie. Good morning. Good morning. You may proceed. Your Honor, this is a bank larceny case with an enhancement that is aiding and abetting each other for recklessly creating substantial risk of death or bodily injury. Isn't the What are the findings of the district court judge was that Mr. Lopez-Felicie constructively possessed a firearm. In that light, he varied upwardly from a guideline sentence of a range of 12 to 18 months to a sentence of a sentence of 60 months, which is 42 months in excess of the stipulated guideline range. The defendant moved arguing for a 12-month sentence and the government agreed to argue for an 18-month sentence. The upward variance in the case law basically states that an upward variance must be justified in order for it to be considered not excessive. In this case, a sentence of 42 months beyond the guideline range, beyond the 18-month maximum of the guideline range, is excessive and is an abuse of discretion on the part of the sentencing judge. Counsel, if I understood your brief correctly, you indicated that some upward variance would be justified here? That's correct, Your Honor. Some would be verified. So the only debate here is about the amount. The amount, yes. The amount is excessive. 42 months is an excessive amount. Did the guideline calculation here take into account at all the exchange of gunfire? Well, if we're talking about 3C1.2, that enhancement did take into account because it discussed recklessly creating substantial risk of death or bodily injury. The district judge said that was satisfied just by speeding away on a public highway, right? Yes, Your Honor. That's enough to trigger the extra two levels under that adjustment. And here we had a gunfight on the public highway, right? That's correct, Your Honor. And that was a big deal for the judge? It was. Okay. Why is—help me understand why this is unreasonable. Now, let me give you some context here, Your Honor. Because this is bank larceny rather than subsection A or D in the relevant criminal statute, which we call bank robbery, Your Honor, it does have a lot of flavor of a bank robbery given the guns and the gunfire. If you do a hypothetical calculation for—you might treat this as a bank robbery. I did some variations on that because that would count as a crime of violence if you have a 924C potential, but you'd be looking at sentences considerably heavier than 60 months for folks here. That makes me wonder why this is unreasonable given the aggravating facts here with the theft and the gunfire. It's only, Your Honor, because there was a specific finding of the judge that he was responsible for constructive possession of the firearm. He was getting exactly the same calculations in a bank robbery with being accountable for other defendants' uses of the gun. Understood, understood. In regard to that fact, Your Honor, it was constructive possession, and there was no evidence that he fired any weapon or that he was in possession of the weapon. But I guess in terms of justifying the sentence here, does that really matter? If he was there when other people were there, when contracts were exchanged on a public street, can't ask the justification for the sentence. Your Honor, do you agree we're on a plain error review here, and extend the explanation for the variance? Yes, Your Honor. Did the defendant never expressly deny possession of the firearm when firing? Yes, Your Honor, he did. When was that? Uh, it was expressed during the sentencing hearing. By the defendant's counsel. I know counsel was saying it wasn't. I'm just wondering if the defendant ever testified where he would have been subject to a challenge on acceptance of responsibility, for example, if he had actually denied possession of a firearm in the background. I believe not, Your Honor. Needless to say, there was a denial on the record by counsel that he did not possess the firearm. When did he discharge the firearm? Your Honor. Do you want to save any extra time for rebuttal? I will save reserve for this rebuttal. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin? Your Honors, if it may please the court, assisting United States Attorney Julian Brzezinski for the United States. The District Court imposed a procedurally and substantively reasonable sentence in imposing a 60-month term of imprisonment in this case. Now, as argued in the government's brief and as acknowledged by the counsel, the standard review here is plain error. As the court knows, the guidelines as calculated in the PSR and the plea agreement were between 12 and 18 months. The government argued for 18 months, the defendant argued for 12 months, and the District Court imposed a 60-month sentence. Now, the appellant has made three arguments, both today and in the opening brief, that the discharge of a firearm was already contemplated in the guidelines, that there's no evidence that the defendant possessed a gun or knew that they were firing at police, and that the District Court did not consider the sentencing factors as it applied to the defendant. In other words, the personal characteristics. I want to focus first on the guidelines and the enhancements that apply because the guidelines here cover essentially less extreme conduct than what the facts of this case contain. In other words, the facts are in many ways outside of the mind-run and outside the heartland of these guidelines. I want to focus first on the first enhancement, which is under 2B1.1b16, and that one is for possession of a dangerous weapon. Now, the Commission here didn't parse out possession, discharge of a firearm as they have done in other sections. For example, in 2B3.1, there are different guidelines depending on whether it's possession, discharge, brandishing, but here it's just for possession. So in other words, this enhancement would apply whether the defendant is possessed or discharged a gun, but there is an application note here that is relevant, and that's Application Note 21A, Roman Numerals, Roman Letters 2, and the District Court referenced this application note, noting that there might be a reason for an upward departure if the conduct substantially understates the seriousness of the crime. And the example given by the Commission there is risking non-monetary harm. For example, physical harm, which is what happened here. Here, the defendants, in fleeing, they get off the highway and they engage in an exchange of gunfire with the police that were in an unmarked vehicle. Certainly that falls within that category of causing—recklessly causing potential physical harm. With respect to the other enhancement that the District Court focused on, for reckless endangerment under 3C1.2, that one is for recklessly creating substantial risk of death or serious body harm to another person while fleeing from the police. And I want to just separate here that that enhancement applies when substantial risk is caused to another person while fleeing from the police.  And here there are two application notes that are important. The District Court focused on one, but indirectly was really referring to another one as well. Application note 2, which defines recklessness, basically recklessness as being a gross deviation from the standard of care, but noting that an upward departure may be warranted depending on the degree of culpability. So again, we have—the Court here gave the example of speeding. Speeding, which is a very common situation in which this enhancement applies. A defendant is being arrested or stopped and he flees from the police and engaging in a high speed. There's no evidence in this record that I could find that the—that it was established that the defendants were speeding. But nonetheless, the District Court noted that speeding itself is something that contributes to this enhancement, which means we have a range here. We have speeding perhaps on one end or the lower end as a trigger for this enhancement to the point of something like discharging of a firearm. Certainly, I think we can agree a much higher level of culpability, a higher level of recklessness. The District Court did also reference application note 6, and that one specifically addresses this issue of the fact that that enhancement applies if risk is caused to one person. And that application note indicates that if risk is—if that risk is—if substantial risk is caused to more than one person, that an upward departure might be warranted. And here, we note for a fact in the record that there were at least three police officers—there were three police officers, rather, in the unmarked vehicle. And certainly, there was a public road. It had already gotten off the highway. There was a public road—a public road at this point. There was an exchange of gunfire. Granted, it's early in the morning, so there's certainly fewer people on the street. But there could have been people in parked cars. There could have been people walking down the street. And so, that application note is certainly contemplating this kind of example, where that risk of harm is potential to more than one person. Counsel, can you—can I ask you to respond to your opposing counsel's argument about the constructive possession issue that it wasn't clear that it was his gun and that he discharged it? In the government's view, does it matter for any of the potential enhancements? And, you know, you're absolutely right with that application note. One of the enhancements is that there's danger created to more than one person. Another one of the enhancements is the discharge of a firearm versus just use and possession of a firearm. Does it matter that there's no proof that he was the one that discharged the gun for any of the enhancements? Can you address that? Yes, Your Honor. The government position is that it does not matter. The indictment charged this crime as aiding and abetting. And the plea agreement, in the statement of facts, the defendant pled under those facts of aiding and abetting. And this report made it clear that it didn't matter also who possessed the gun and who discharged the gun. And I think it's important in this case, the three defendants engaged in this conduct together. They showed up at the Walgreens together to rob the ATM from inside. They broke in together, and they loaded it onto the pickup truck, and they fled together. In terms of the evidence that the government had at the time, in terms of negotiating the plea agreement and the evidence that it presented to the court, the only thing the government had was potential DNA on the gun that favored including the defendant. But there was certainly no certainty from the part of the government as to who actually fired the gun or who actually possessed it. In many of these cases, it would be impossible for the government to know that without a lawyer. But in terms of whether it matters for purposes of any of these events, it's the government's position that it does not. Do we know whether the Glock itself had been fired or what had been going on? Well, we have evidence that the police officers indicated that they were fired at first. In addition— That's not my question. Do we have indications that there were times when at least two guns were being dropped randomly? Well, that is a—the district court mentioned two firearms in the sentencing. Was he right about that? Well, he's not right in terms of the record because the issue there—it's unclear whether he's referring to two firearms as being one in the truck and one from the police because shell casings from two different guns were found at the scene, or two different guns. I assume the police know which shell casings came from their gun. Correct. So the two sets of shell casings from two non-police guns? I don't have that information here. Certainly, one of the guns—the gun that was found at the bend was a Glock pistol, .40 caliber, and shell casings for a Glock caliber .40 were found at the scene, as well as a 9mm. But the Glock was not tested for residue or anything like that? There was no—there was no ballistic testing conducted on the gun. Okay. To finish on the issue of the reckless endangerment, the government also just notes that, you know, the fact that a gun was abandoned at the scene could potentially trigger this enhancement as well. We know from the record that the defendants fled, the gun was abandoned, someone else could have picked up that gun, and then that certainly would have triggered that enhancement. The district court also referenced 5K2.6, which is the policy statement, indicating here where the commission recommends the discharging of a pyre or a might warrant an upward variance as well. Certainly, 42 months is substantial, but it is justified. And if I could mention briefly, with respect to the evidence, that there's no evidence that the defendant possessed the gun or that they knew it was discharged, as I answered Judge Rickleman, again, the government's position is that it's certainly not relevant for any of these enhancements. And with that, the government rests on its brief and requests that this court affirm Thank you. Thank you, counsel. At this time, counsel for the appellant may reintroduce himself on the record. He has a two-minute rebuttal. Yes, Your Honor. The only thing I can really present to the court is that it was constructive possession. There is no evidence that he possessed the firearm or that he discharged the firearm. And this individual is a first-time offender. He has no prior criminal history. And these are factors that should be taken into consideration in terms of whatever justification the judge should have taken into consideration at the moment of sentencing him to such a sentence, such a time in prison. Thank you. Thank you, counsel. That concludes argument in this case.